IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LIBERTY MUTUAL INSURANCE
COMPANY, ET AL.                                                      PLAINTIFFS

VS.                                      CIVIL ACTION NO. 3:18-cv-662-CWR-JCG

MEDWORX HOME MEDICAL SUPPLIES,
LLC, DARON WALTERS, JOHN DOE
DEFENDANTS 1-5, and JANE DOE
DEFENDANTS 1-5                                                       DEFENDANTS

**LIBERTY MUTUAL'S MEMORANDUM BRIEF
IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## I.      INTRODUCTION

Medworx submitted Health Insurance Claim Forms, invoices, and other claims documents

seeking payment for providing pumps and cuffs to go around workers' compensation patients'

limbs to prevent blood clots. If the pumps and cuffs are used only in a surgical facility, then they

**are not** payable because they are included in the global facility fee. If the pumps and cuffs are

used at home pursuant to a proper prescription and compensable medical condition, then they **are**

generally payable by the workers' compensation carrier. Over an extended period of years,

Medworx, at the direction of and with participation of Daron Walters, repeatedly and continuously

submitted approximately 612 claim forms and invoices in which they misrepresented that the

pumps and cuffs were used at home when they were in fact not used at home. Liberty Mutual relied

upon these representations and paid defendants for claims which were not properly payable.

Liberty Mutual alleged in the Second Amended Complaint that Medworx submitted these

claims and that Daron Walters (and John Does 1-5 and Jane Does 1-5) substantially and knowingly

participated in the direction and execution of these acts, which is sufficient to state a claim against

Walters in his individual capacity. Moreover, as the permit holder, the Mississippi Board of Pharmacy's regulations hold Walters individually responsible for these acts. Liberty Mutual set forth specific allegations of defendants' repeated and continuous misconduct identifying who (Medworx, including through the participation and direction of Daron Walters), what (false place of service codes entered on CMS Form 1500/Health Insurance Claim Forms and invoices for pumps/cuffs that were not properly reimbursable), when (from November 2011 through early 2018), where (on willfully misrepresented CMS Form 1500/Health Insurance Claim Forms and invoices), and how (submitting invoices requesting payment for pumps/cuffs for home use when the pumps/cuffs were never actually provided for home use and deliberately using the wrong place of service code signifying the subject pumps and/or cuffs were used in patients' homes rather than only in surgery resulting in Liberty Mutual paying over $750,000 in claims that it would not have otherwise paid, if it had not relied on the inaccurate and improper invoices and place of service codes used by Medworx on CMS Form 1500/Health Insurance Claim Forms).

The Second Amended Complaint also makes it clear "who" made each alleged misrepresentation. Medworx submitted the fraudulent claims and its President, CEO, and sole owner, Daron Walters, "substantially and knowingly participated in the direction and execution of" these acts. Liberty Mutual was diligent and filed its Complaint less than one year after first discovering that Medworx had been repeatedly and continuously submitting inaccurate or false claims, and their claims are not barred by the statute of limitations pursuant to the continuing tort doctrine and the discovery rule. Defendants' Motion to Dismiss should be denied, or alternatively, Liberty Mutual should be granted leave to amend their Complaint.

## II.     ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

Liberty Mutual Insurance Company, Colorado Casualty Insurance Company, Consolidated Insurance Company, Employers Insurance of Wausau, Excelsior Insurance Company, Helmsman Management Services LLC, Liberty Insurance Corporation, Liberty Mutual Fire Insurance Company, Liberty Northwest Insurance Corporation, LM Insurance Corporation, The Ohio Casualty Insurance Company, Peerless Indemnity Insurance Company, Peerless Insurance Company, The First Liberty Insurance Corporation, The Netherlands Insurance Company, Wausau Underwriters Insurance Company, American fire and Casualty Company, Ohio Security Insurance Company, and West American Insurance Company (collectively referred to as "Liberty Mutual") are affiliated companies which provide either underwriting or claims administration services for employers' workers' compensation insurance. When employees covered by Liberty Mutual's workers' compensation insurance have a compensable claim under their workers' compensation insurance policies, the claimants may assign their claims to various medical providers who file the claims with Liberty Mutual. In turn, Liberty Mutual pays medical providers who have taken assigned claims for services and products which are reimbursable under applicable workers' compensation laws. (Second Amended Complaint or "SAC", ¶ 24).  Liberty Mutual handles an extremely large volume of such claims, averaging approximately 10,000 claims per day, which are required to be paid promptly.  (SAC, ¶ 30).

Defendants Medworx Home Medical Supplies, LLC, Daron Walters, John Does 1-5 and Jane Does 1-5 provided medical equipment and medical supplies to patients undergoing surgical procedures at hospitals and surgery centers, including electrically operated pneumatic compression devices ("pumps") and disposable compression cuffs or sleeves ("cuffs") which are fitted around certain patients' arms or legs during surgery and recovery from surgery to prevent deep venous

thrombosis. (SAC, ¶ 25). Medworx obtained assignments of potential workers' compensation claims from patients who were fitted with compression pumps and cuffs for use in connection with surgical procedures in surgical facilities. (SAC, ¶ 29). Medworx then filed claims with Liberty Mutual, the applicable workers' compensation insurance carrier, for reimbursement for use of the applicable pump and/or cuffs in connection with the surgical procedures. (SAC, ¶¶ 29, 31, 32, 33).

The cost of pumps and/or cuffs are not reimbursable if they are only used during or after surgery at surgical facilities because they are considered part of the "global facility fee" paid to the surgical facility for a bundled group of products and services used during the procedure. (SAC, ¶ 28). On the other hand, the pumps and/or cuffs are separately reimbursable under workers' compensation laws for certain compensable medical conditions when used by patients at home pursuant to a physician's order for at-home use for these specific medical conditions. (SAC, ¶ 27).

Between November 2011 and early 2018, Medworx repeatedly and continuously submitted claims for reimbursement to Liberty Mutual – 612 claims totaling $752,500.80 – for pumps and/or cuffs which were used in connection with surgical procedures on workers' compensation patients, but which were not used by the patients at home. (SAC, ¶ 31; see also Exhibit 1 to SAC). Medworx submitted these claims on a CMS Form 1500/Health Insurance Claim Form ("Form 1500"), and certified that the information on the CMS Form 1500 was "true, accurate and complete." (SAC, ¶ 32). Each CMS Form 1500 submitted by Medworx included a specific "place of service" code. (SAC, ¶ 33). The "place of service" codes for inpatient hospitals is "21," on-campus outpatient hospitals is "22," and for ambulatory surgical facilities is "24," while place of service code "12" represents that the pumps and/or cuffs were used by patients at home. (SAC, ¶¶ 33).

Medworx included additional documentation with the CMS Form 1500 filed with Liberty Mutual as part of the subject claims including an invoice requesting payment for the pumps and/or

cuffs that were purportedly used at home and other documentation representing that patients took

the pumps and/or cuffs home from surgery for use at home pursuant to a physician's order, when

in fact, the pumps and/or cuffs were not taken home for use pursuant to any physician's orders.

(SAC, ¶ 33). Medworx represented that the claims were properly compensable under applicable

laws in the Relevant Jurisdictions, when, in fact, they were not. (SAC, ¶ 33). Medworx knew, or

with the exercise of reasonable diligence would have known, that the pumps and/or cuffs were

used only in surgery and not by patients in their homes. (SAC, ¶ 34).

For the information on the CMS Form 1500's submitted by Medworx to have been truthful,

Medworx should have stated place of service code 21, 22 or 24 on all of the CMS Form 1500's

submitted for pumps and/or cuffs used only at the surgical facility. (FAC, ¶ 30). Medworx did not

do this but instead submitted CMS Form 1500's for each claim using place of service code 12

falsely representing to Liberty Mutual that the pumps and/or cuffs were used by patients at home.

Medworx also submitted invoices and other documents representing to Liberty Mutual that it had

provided the pumps and/or cuffs to patients for home use and they were properly payable when it

did not provide them for home use, and they were not payable. (SFAC, ¶ 32-34). Medworx did

this to cause Liberty Mutual to reimburse Medworx for these claims that were not otherwise

reimbursable. (SAC, ¶ 34). Medworx failed to obtain proper licenses/registrations/permits in the

Relevant Jurisdictions with the sole exception that Daron Walters, individually, obtained a

permit/license/registration in Mississippi, and Medworx failed to inform Liberty Mutual of its

failure to obtain the required permits/licenses/registrations to be able to provide the pumps and/or

cuffs in the other Relevant Jurisdictions. (SAC, ¶ 33). Liberty Mutual would not have paid the

claims if it had known Medworx did not have the proper licenses/registration/permits to provide

the pumps and/or cuffs. Each of these misrepresentations were material misrepresentations, and if

Medworx had provided truthful and complete information, Liberty Mutual would have properly denied the claims. (SAC, ¶¶ 33-37). Walters is the President, chief executive officer, and sole member of Medworx Home Medical Supplies, LLC, and he substantially and knowingly participated in the direction and execution of all of these acts. (SAC, ¶26).

Liberty Mutual did not know that the pumps and/or cuffs for which Medworx was seeking reimbursement were used only in surgical procedures in surgical facilities and not by patients at home until it became suspicious of the defendants' scheme in late 2017. (See Exhibit "1," Declaration of William Jenkin). Liberty Mutual necessarily must rely on the person and/or entity filing the claim to provide truthful, accurate and complete information. (SAC, ¶ 30). Liberty Mutual reasonably relied on the place of service codes Medworx repeatedly and continuously provided on the Form 1500's, reasonably relied on the representations in the invoices and claim documents submitted by Medworx that patients took the pumps and/or cuffs home from surgery for use pursuant to a physician's order and that the claims were properly compensable under applicable laws, and reasonably relied on Medworx's omission of the material fact that it did not possess the proper permits/licenses/registrations, which caused Liberty Mutual to pay Medworx $752,500.80 for 612 claims between 2011 and 2018 that should not have been reimbursable to Medworx. (SAC, ¶¶ 33-37). Liberty Mutual has demanded that the monies be returned, and Medworx has refused. (SAC, ¶¶ 38, 49, 51).

Liberty Mutual has asserted causes of action for fraudulent misrepresentation (SAC, ¶¶ 39-43); negligent misrepresentation (SAC, ¶ 44-46); unjust enrichment (SAC, ¶¶ 47-49); and conversion (SAC, ¶¶ 50 – 51).

### III.    STANDARD

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint is only dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), a court must accept the plaintiff's factual allegations as true and must also make reasonable inferences in the plaintiff's favor. *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Such motions test the legal viability of the Complaint, and importantly, courts must assume "that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Then, courts determine whether those allegations set forth a "plausible" right to recovery. *Id*. at 570. A complaint must merely plead "enough facts to state a claim to relief that is plausible on its face." *Id*. A claim is plausible on its face when the factual content pled "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *U.S. ex rel. Academy Health Center, Inc. v. Hyperion Foundation, Inc*., No. 3:10-CV-552-CWR-LRA, 2014 WL 3385189, at *21 (S.D. Miss. July 9, 2014). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *Virginia College, LLC v. Martin*, No. 3:11CV682 DPJ-FKB, 2012 WL 2873888, at *1 (S.D. Miss. July 12, 2012) (quoting *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008)).

Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud" when alleging fraud. Fed. R. Civ. P. 9(b). While the rule sometimes asks for the "time, place and contents of a false representation, as well as the identity of the person making the misrepresentation and what that person obtained thereby, the Fifth Circuit has held that this standard is not a straitjacket." *Id*. (quoting *United States ex rel. Colquitt v. Abbott Labs*, 864 F.Supp.2d 499, 533 (N.D. Tex. 2012) (citing *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir.

2009))). While Rule 9(b) is a heightened standard, it does not "reflect a subscription to fact pleading" and must still be read in conjunction with "Rule 8(a)'s insistence upon 'simple, concise, and direct allegations.'" *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (quoting Fed. R. Civ. P. 8(a)). Rule 9(b) typically requires "the who, what, when, where, and how" to be set forth. *Benchmark Electronics, Inc. v. J.M Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). However, "what constitutes 'particularity' will necessarily differ with the facts of each case." *Id*. (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)). "'Stating with particularity the circumstances constituting fraud' 'does not necessarily and always mean stating the contents of a bill.'" *Fustok v. UnitedHealth Group, Inc.*, No. 12-cv-787, 2013 WL 2189874, at *5 (S.D. Texas May 20, 2013) (quoting *U.S. ex rel Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)). "This is especially true when the fraud alleged extended over a period of time." *Id*.

## IV. ARGUMENT

### A. Walters is liable in his individual capacity because he is the permit holder and he substantially and knowingly participated in the direction and execution of the wrongful acts.

Medworx argued that Liberty Mutual failed to plead facts to pierce the limited liability veil of Medworx, but this argument misses the point and ignores the relevant rule of law because Liberty Mutual has alleged that Walters directly participated in the wrongful conduct. Mississippi courts have explained that "the general rule is well established that when a corporate officer directly participates in or authorizes the commission of a tort, even on behalf of the corporation, he may be held personally liable." *Turner v. Wilson*, 620 So. 2d 545, 548 (Miss. 1993) (quoting *Mississippi Printing Co., Inc. v. Maris, West & Baker, Inc.*, 492 S. 2d 977, 978 (Miss. 1986)). "Any officer or agent who actively participates in the commission of a tort [conversion] is

personally liable to third persons injured thereby." *Id.* (quoting *Wilson v. South Cent. Miss. Farmers, Inc.*, 494 So. 2d 358, 361 (Miss. 1986)).

> The court in *Wilson* quoted 19 C.J.S. Corporations § 849, p. 276 with approval as follows:
>
> > The rule that directors, officers, or agents, of a corporation are liable for their torts to a person injured thereby, . . . is applicable where they are guilty of conversion. This is true even though they act in behalf of the corporation and although the corporation may also be liable, as where money or property of a third person is in the hands of the corporation and the officers in control knowingly and intentionally convert it by refusing to give up possession, or by applying it to the uses of the corporation, and it is also true even though the directors, officers, or agents act in good faith, and do not personally benefit or profit from the conversion.  All who are concerned or participate in the wrong are personally liable.

*Wilson*, 494 So. 2d at 361 (quoting 19 C.J.S. Corporations § 849, p. 276).

> The court has also quoted C.J.S. with approval in *Turner* as follows:
>
> > A director, officer, or agent is liable for the torts of the corporation … when … he has participated in the tortious act, or has authorized or directed it, or has acted in his own behalf, or has had any knowledge of, or given any consent to, the act or transaction, or has acquiesced in it when he either knew or by the exercise of reasonable care should have known of it and should have objected and taken steps to prevent it.

*Turner*, 620 So. 2d at 548-59 (quoting 19 C.J.S. Corporations § 544, p. 175 (1990)).

In *Turner*, farmers who stored soybeans in a financially insolvent agricultural grain warehouse brought suit for conversion against the corporate directors.  *Turner*, 620 So. 2d at 546. The farmers received a judgment against the directors, but two of the directors appealed arguing that there was no evidence they authorized, directed, or participated in the wrongful conversion or that they had knowledge of the conversion.  *Id*.  The court agreed that plaintiffs in that case had failed to present any evidence that the directors either authorized, directed, or participated in the conversion of plaintiff's soybeans.  *Id*. at 550. However, when the corporate officer has authorized, directed, or participated (as is alleged with respect to Walters), he will be personally liable.

A classic example of the general rule is the truck driver/owner of a trucking company who is involved in a trucking accident. There is no doubt that the truck driver/owner is individually liable because he personally participated in the tort even though he was working on behalf of the corporation. That is precisely what Liberty Mutual has pled in this case – that Walters "substantially and knowingly participated in the direction and execution" of the subject wrongful acts. (SAC, ¶ 26). At the motion to dismiss stage, these allegations are sufficient, and defendants' motion to dismiss claims against Walters in his individual capacity should be denied.

Additionally, Walters is liable in his individual capacity because he is the permit holder for the Medical Equipment Suppliers Permit in Mississippi. (Exhibit "2," Permits). In *J. Criss Builder, Inc. v. White*, a construction company, J. Criss Builder, Inc. ("JCB"), was wholly owned by Criss. *J. Criss Builder, Inc. v. White,* 35 So. 2d 541, 543 (Miss. Ct. App. 2009). JCB purchased a lot and constructed a home on the lot before conveying the lot and completed home to Criss in her individual capacity. *Id.* Criss later sold the home to the Whites who subsequently discovered foundation issues and sued JCB and Criss. *Id.* JCB did not have a builder's license, but Criss, in her individual capacity, possessed the license. *Id.* at 545. The court explained that this was not a piercing the veil type of case, but one where it was alleged that Criss had personally participated in the tort. *Id.* at 544-46. JCB was not licensed; Criss was. She was the licensed builder of the house in her individual capacity, and she personally participated in the work. *Id.* at 545. The court affirmed the judgment against her in her individual capacity. *Id* at 546.

Section 73-21-108 of the Mississippi Pharmacy Practice Act requires a Medical Equipment Suppliers Permit from the Mississippi Board of Pharmacy before a person or business can sell, rent, or provide any home medical equipment. Miss. Code Ann. § 73-21-108(2). Home medical equipment includes "sequential compression devices." Miss. Code Ann. § 73-21-108(1)(a)(viii).

The Mississippi Board of Pharmacy's regulations state that the person who signs the application for a medical equipment suppliers permit shall be the permit holder for that facility and "shall be responsible for all activities." 30 Miss. Admin. Code Pt. 3001, Art. XXXVIII. Walters was the permit holder for Medworx. (See Exhibit "2"). As the permit holder for Medworx, Walters "shall be responsible" for all of its activities pursuant to the Mississippi Board of Pharmacy's regulations even if he had not personally participated in the direction and execution of the alleged acts. Regardless, at this Motion to Dismiss stage, Liberty Mutual has sufficiently alleged facts that require denial of Walters' Motion to Dismiss claims against him in his individual capacity.

**B. Liberty Mutual's allegations were pled with sufficient particularity to place each defendant on notice of their misconduct.**

Rule 9(b) of the Federal Rules of Civil Procedure provides, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). While Rule 9(b) is a heightened standard, it does not "reflect a subscription to fact pleading" and must still be read in conjunction with "Rule 8(a)'s insistence upon 'simple, concise, and direct allegations.'" *Williams v. WMX Technologies, Inc*., 112 F.3d 175, 178 (5th Cir. 1997) (quoting Fed. R. Civ. P. 8(a)). Rule 9(b) typically requires "the who, what, when, where, and how" to be set forth. *Benchmark Electronics, Inc. v. J.M Huber Corp*., 343 F.3d 719, 724 (5th Cir. 2003). However, "what constitutes 'particularity' will necessarily differ with the facts of each case." *Id*. (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)).

"'Stating with particularity the circumstances constituting fraud' 'does not necessarily and always mean stating the contents of a bill.'" *Fustok v. UnitedHealth Group, Inc*., No. 12-cv-787, 2013 WL 2189874, at *5 (S.D. Texas May 20, 2013) (quoting *U.S. ex rel Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)). "This is especially true when the fraud alleged extended over a period of time, years in this case." *Id*. A plaintiff is "not required to allege all facts supporting

every instance when the defendant engaged in fraud" when it is alleged that the fraud occurred over a period of years. *Id*. (citing *Carter v. Gibson*, 2011 WL 1515049 (N.D. Tex. Apr. 20, 2011)). Such a requirement would cause Complaints to be in the hundreds of pages or even hundreds of pounds. *Johnson v. Shell Oil Co*., 183 F.R.D. 204, 207 (E.D. Tex. 1998). "When the transactions are numerous and take place over an extended period of time, less specificity in pleading fraud is required. *South Broward Hosp. Dist. v. MedQuist, Inc*., 516 F.Supp.2d 370, 385 (D. New Jersey 2007). Where the fraud "occurred over a period of time, the requirements of Rule 9(b) are less stringently applied." *Johnson*, 183 F.R.D. at 206 (internal citations omitted).

      i.     **Liberty Mutual has pled the who, what, when, where, and how.**

In *Fustok*, UnitedHealthcare asserted claims that Fustok performed procedures for cosmetic, rather than therapeutic, purposes, making them ineligible for reimbursement, and then engaged in a scheme to obtain payment for the procedures that were not reimbursable. *Fustok v. UnitedHealth Group, Inc*., No. 12-cv-787, 2013 WL 2189874, at *1 (S.D. Texas May 20, 2013). To seek reimbursement, Fustok submitted health service claim forms to United using a code to indicate the procedure provided. *Id*. United explained that it received hundreds of millions of claims for benefits each year, and as a result relied upon the veracity of the submitted claims to be able to timely process reimbursements. *Id*. United was tipped off about Fustok's procedures, and it began a review of his billing practices where it found fraudulent billing practices. *Id*. United alleged in its counterclaim that Fustok submitted claim forms using incorrect CPT codes for cosmetic procedures Fustok knew were not covered. *Id*. at *2. United identified the specific codes used by Fustok and the code that should have been used. *Id*. United alleged that Fustok did this between December 9, 2007 and December 9, 2010. *Id*. United identified the total number of claims submitted and total payment. *Id*. Fustok moved to dismiss and argued that Untied had not pled

with sufficient particularity as required by Rule 9 because United had not identified who, what, when, where, or how the representations were made for each bill. *Id*. at \*4 – 5.

The court explained that *Fustok* was wrong about the actual requirements, because stating fraud with particularity did not necessarily and always mean stating the contents of a bill, especially when the fraud alleged extended over a period of time – three years in Fustok's case. *Id*. at \*5. United pled that the misrepresentations were made on claim forms that require providers to describe the services provided to patients using a code; pled that the fraudulent practice occurred from December 9, 2007 until December 9, 2010; and pled the particular codes used. *Id*. The court held that this was sufficient to meet the Rule 9(b) standard and Fustok was given fair notice of United's claims. *Id*.

*Johnson* was a False Claims Act case, but it is still informative because Rule 9(b)'s pleading requirements are applicable. In *Johnson*, the relators alleged that oil companies who leased land containing resources of oil were making false statements on monthly royalty reports to the government resulting in underpayments to the government. *Johnson v. Shell Oil Co*., 183 F.R.D. 204, 207 (E.D. Tex. 1998). The oil company defendants argued that the complaint lacked the specific allegations required by Rule 9(b). *Id*. at 206. Defendants argued the complaint did not identify which defendant committed which fraudulent activity and when the activity took place; did not identify specific royalty amounts withheld; did not specify any particular oil value improperly used; did not identify the dates false claims were submitted; did not identify the persons making the false claims; or where the fraud occurred. *Id*. The court disagreed and noted that where the fraud was complex and "occurred over a period of time, the requirements of Rule 9(b) are less stringently applied." *Id*. (internal citations omitted).

The court explained that the complaint included "what" is alleged – false statements entered in the blanks on the monthly report; "when" -- when the report was filled out monthly from 1988 to the date of the Complaint; "where" -- on the monthly report; "who" -- the corporate defendants; and "how" -- each report identified a value of oil less than that actually received. *Id.* at 207–08. While defendants contended that the Complaint should include specific dates and invoices numbers for each transaction, the court rejected this notion, and explained that "such a requirement would cause the complaint to be in the hundred of pages, if not hundreds of pounds." *Id.* at 207.

In *Blue Cross & Blue Shield of Mississippi v. Sharkey-Issaquena Community Hospital*, Blue Cross alleged that the hospital submitted claims for payments for laboratory services that were not actually ordered by a licensed health professional at the hospital or for services that were not actually performed at the hospital but instead were performed by independent laboratories outside Blue Cross' network. *Blue Cross & Blue Shield of Mississippi v. Sharkey-Issaquena Community Hospital*, No. 3:17-CV-338-DPJ-FKB, 2017 WL 6375954, at *1 (S.D. Miss. Dec. 13, 2017). Blue Cross sued the hospital and laboratories, and the defendants moved to dismiss claiming Blue Cross failed to satisfy Rule 9(b). *Id.* at *8. Defendants argued that Blue Cross did not provide the identity or quantity of the fraudulent transactions. *Id.* Chief United States District Judge Jordan held that Blue Cross did sufficiently plead fraud and negligent misrepresentation because it alleged that each bill submitted misrepresented that the services rendered were covered and reimbursable. *Id.* Under the circumstances of that case, that allegation provided sufficient information to put the defendants on notice of the complained-of conduct. *Id.*

In the present case, Liberty Mutual alleged that the fraud extended over an extended period of time -- seven years -- even longer than in *Fustok*. Liberty Mutual identified the specific code

used by Medworx and the specific code that should have been used. Liberty Mutual alleged that Medworx did this from November 2011 to 2018. Liberty Mutual identified the total number of claims and the total payment. Liberty Mutual pled that the misrepresentations occurred on claim forms, invoices, and other claim documents, pled the fraudulent practice occurred from November 2011 to 2018, and pled the particular codes. This was sufficient in *Fustok* and is sufficient to put Medworx on notice of its alleged misconduct in this case too.

This case is also similar to *Johnson*. Like the relators and government in *Johnson*, Liberty Mutual included the "what" -- false place of service codes entered on CMS Form 1500/Health Insurance Claim Forms and invoices for pumps and/or cuffs never provided for home use, "when" - from November 2011 through 2018, "where" --  on inaccurate CMS Form 1500/Health Insurance Claim Forms and invoices fraudulently submitted, and "how" -- using the wrong place of service code and submitting invoices signifying the pumps and/or cuffs were used in patients' homes rather than only in surgery resulting in Liberty Mutual paying over $750,000 in claims that it would not have otherwise paid if had not relied on the inaccurate place of service codes used by defendants. This was sufficient in *Johnson*.  When the fraud continues over an extended period of time like the seven or eight years in this case, it is not necessary to include the contents of each specific claim form or bill, and it is not necessary to include specific dates and claim numbers of each transaction, but Liberty Mutual has done that in Exhibit 1 to the Second Amended Complaint. Liberty Mutual has provided more than enough information to place Medworx on notice of its alleged conduct, and defendants' Motion to Dismiss Complaint should be denied.

ii.     **Liberty Mutual has pled "who."**

In this version of their Motion to Dismiss, defendants appear to concede that the what, when, where, and how are sufficiently pled and focus only on the "who," but the Second Amended

Complaint is clear "who" did what. Medworx mailed Form 1500s, invoices, and other claims documents containing the misrepresentations discussed throughout this memorandum and the Second Amended Complaint to Liberty Mutual to get Liberty Mutual to pay for claims it should not and would not otherwise have paid. (SAC, ¶¶ 29, 31-33). Liberty Mutual paid the claims to Medworx. (SAC, ¶ 36). Walters directed and participated in the execution of the acts committed by Medworx. (SAC, ¶ 26). Liberty Mutual's Second Amended Complaint has provided a sufficient factual basis to distinguish the conduct between the company, Medworx, and Walters individually, and any claim otherwise is disingenuous.

Without providing any analysis or discussion of the cases upon which they rely, Medworx and Walters argue that Liberty Mutual has merely lumped all defendants together without specifying what each defendant did. Medworx and Walters have taken those cases completely out of context. Only one of the cases relied upon involves a discussion of lumping together an individual defendant who participated in the wrongful acts of the company with the company and it held that the allegations were sufficient. Instead each of those cases discuss multiple unrelated defendants being lumped together and focuses their analysis on the what, when, where, and how. In the present case, Walters is the President, CEO, and sole owner of Medworx, and it is alleged that he personally participated in the direction and execution of the acts committed by Medworx. Moreover, Walters is listed as the "permit holder" for Medworx. This is different from every case relied upon by Medworx and Walters.

Defendants argue that the Complaint suffers from failures similar to those identified in *Dickens*, *Sahlein*, and *Cummings*, but that could not be further from the truth and none of those even discuss who among multiple defendants committed the wrongful acts. For example, *Dickens* was a products liability case alleging plaintiff developed mesothelioma from exposure to asbestos

from various products and was brought against numerous unrelated defendants. *Dickens v. A-1 Auto Parts & Repair, Inc*., No. 1:18CV162-LG-RHW, 2018 WL 5726206, *1 (S.D. Miss. Nov. 1, 2018). The claim was dismissed because there were no allegations regarding the date, time, place, or content of any fraudulent communications. *Id*. at *3. *Sahlein* involved claims against 14 unrelated defendants regarding a promissory note and deed of trust that were allegedly fabricated, but the claims were dismissed because plaintiffs did not allege how they relied on any misrepresentations, who made any payments, how much was paid, when they payments were made, or to whom they were paid. *Sahlein v. Red Oak Capital, Inc*., No. 2:13-CV-000067-DMB-JMV, 2014 WL 3046477, *5 (N.D. Miss. July 3, 2014). Liberty Mutual has pled that Medworx submitted CMS Form 1500s, invoices, and other documents containing misrepresentations (and produced copies of each in discovery), how it relied on those misrepresentations, which plaintiffs made the payments, how much money was paid, when the payments were made, and that the payments were sent to Medworx (and produced in discovery copies of Explanation of Benefits forms identifying this and additional information for each of the 612 claims).

     *Cummings* involved a class action claim that loans failed to contain a credit-life-insurance provision that plaintiffs were led to believe would be included with the loan. *Cummings v. Wells Fargo, N.A.,* No. 1:18-CV-72-SA-DAS 2019 WL 180188, *1 (N.D. Miss. Jan. 11, 2019). The case was dismissed because the complaint did not allege how plaintiffs relied on the misrepresentation, did not identify the salesperson who made the misrepresentations or any other details about those conversations, and did not identify when they occurred. *Id*. at *6-7. Liberty Mutual alleged all of those with specific detail in its Second Amended Complaint, including the spreadsheet attached as exhibit 1 to the Second Amended Complaint.

Defendants also referred to three cases from other jurisdictions, but they also are distinguishable and too different to be persuasive. *Cisneros* is a California case alleging that defendants placed plaintiff into a loan with no benefit to her for the purpose of financially injuring her. *Cisneros v. Instant Capital Funding Group, Inc*., 263 F.R.D. 595, 605 (E.D. Cal. 2009). There were ten separate defendants. *Id*. at 603. The case only involved a motion to dismiss filed by one defendant, a defendant who had no connection to the loan transaction other than serving as a foreclosure trustee years after the loan originated. *Id*. There were no independent allegations against the moving defendant and nothing to inform it of the allegations against it. *Id*. at *605-07. Plaintiff failed to identify the role of each defendant in the fraudulent scheme. *Id*. at 607. Liberty Mutual has identified and explained that Medworx submitted the CMS Form 1500s, invoices, and other documents, and Walters personally participated in the direction and execution of those acts. Each defendant is on notice of their role and alleged involvement in the fraudulent scheme.

The Second Amended Complaint in *Parkcentral Global Litigation* is over 70 pages long, but the allegations repeatedly refer to two of the numerous defendants together as "Blasnik and Karmin." *In re Parkcentral Glob. Litig*., 884 F.Supp.2d 464 (N.D. Tex. 2012). Blasnik and Karmin are "lumped" together throughout the complaint in allegations regarding control of a hedge fund, but the court denied their motion to dismiss and found that the allegations as to those two defendants were sufficient without even discussing the fact that they were grouped together throughout the complaint. *Id*. at 478-80.

*Billiouris* is a Texas case that is not helpful because few details are contained in the decision. *Billiouris v. Sundance Resources, Inc*., 559 F.Supp.2d 733 (N.D. Tex. 2008). Plaintiffs invested in a "Rig Bank Fund" to finance the purchase of oil and gas drilling rigs, and alleged that the defendants shifted funds and assets form the Rig Bank Fund to other defendants, but the

decision is devoid of other facts or specific allegations. *Id*. at 735. While *Billiouris* notes a general rule that plaintiffs may not typically rely on group allegations that fail to specify which members of the group engaged in the alleged conduct, it does not provide enough factual detail to compare to the specifics that Liberty Mutual provided in its Second Amended Complaint.

The *Fustok* case mentioned above is more similar to the present case and thus more persuasive, and in *Fustok*, UnitedHealthcare asserted counterclaims that Abdel K. Fustok, M.D. and Abdel K. Fustok M.D., P.A. performed procedures for cosmetic, rather than therapeutic, purposes, making them ineligible for reimbursement, and then engaged in a scheme to obtain payment for the procedures that were not reimbursable by submitting claims forms with the wrong CPT codes. *Fustok v. UnitedHealth Group, Inc*., No. 12-cv-787, 2013 WL 2189874 (S.D. Texas May 20, 2013). Throughout United's Counterclaim, it directed its allegations to Fustok and his company collectively as "plaintiffs/counter-defendants." The court held that United provided Fustok with fair notice of its claims. *Id*. at *5. Thus, even if Medworx and Walters were "lumped" together, they were still provided fair notice of Liberty Mutual's claims.

Liberty Mutual alleged that Medworx mailed CMS Form 1500s, invoices, and other claims documents containing the misrepresentations to Liberty Mutual and provided the details surrounding those claims. Liberty Mutual also alleged that Walters, individually, directed and participated in the execution of those acts committed by Medworx. The Second Amended Complaint identifies which defendant engaged in the alleged conduct and allows the defendants to distinguish between the conduct of the company and the individual. Defendants' Motion to Dismiss should be denied.

### C. Liberty Mutual has sufficiently pled a claim for negligent misrepresentation under Fed. R. Civ. P. 8.

Negligent misrepresentation is not subject to the heightened standard of Rule 9(b) in this case as Liberty Mutual has pled a different set of facts for its negligent misrepresentation claim. While both claims do involve the submission of claim forms misrepresenting the proper place of service and invoices misrepresenting pumps and/or cuffs were provided at home and payable under applicable law, the factual basis pled for the misrepresentation differs in the two claims. In the fraudulent misrepresentation claim, Liberty Mutual alleges that Medworx knew the pumps and/or cuffs were only used in surgery, but in the negligent misrepresentation claim, Liberty Mutual does not allege that Medworx knew. It alleges that Medworx would have known with the exercise of reasonable diligence. (SAC, ¶ 34). Medworx's knowledge of the misrepresentation is a key difference in the factual basis pled under the different claims, and it is also one of the key differences in the elements required for both claims.

Fraudulent misrepresentation requires the following elements:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

*Holland v. Peoples Bank & Trust Co*., 3 So. 3d 94, 100 (Miss. 2008) (quoting *Bank of Shaw v. Posey*, 573 So. 2d 1355, 1362 (Miss. 1990)). On the other hand, negligent misrepresentation requires the following elements:

(1) A misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct or proximate result of such reasonable reliance.

*Id.* at 101.

Because Liberty Mutual's negligent misrepresentation claim is based on a different set of facts from its fraudulent misrepresentation claim, specifically that Medworx would have known the place of service code was not accurate if it had exercised reasonable diligence as opposed to the factual allegation that Medworx did know the place of service code was not accurate for the fraud claim, the heightened Rule 9(b) standard does not apply, and Liberty Mutual has sufficiently alleged a negligent misrepresentation claim. Alternatively, it has satisfied the requirements of Rule 9(b) as explained above in section B.

### D. Liberty Mutual has stated a claim for unjust enrichment.

"Unjust enrichment applies in situations where no legal contract exists, and the person charged is in possession of money or property which, in good conscience and justice, he or she should not be permitted to retain, causing him or her to remit what was received." *Willis v. Rehab Solutions, PLLC*, 82 So. 3d 583, 588 (Miss. 2012) (citing *Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005)). Unjust enrichment applies when one party has mistakenly paid another party. *Id.* (citing *Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175, 1182 (Miss. 2004)). Even if the "mistake" was caused by the payor's own negligence, money paid to another by such mistake may be recovered from party to whom it was paid. *Id.*

In *Blue Cross & Blue Shield of Mississippi v. Sharkey-Issaquena Community Hospital*, Blue Cross alleged that defendants wrongfully obtained money from Blue Cross in payment of insurance claims that were improper, and Blue Cross was seeking return of those funds. *Blue Cross & Blue Shield of Mississippi v. Sharkey-Issaquena Community Hospital*, No. 3:17-CV-338-DPJ-FKB, 2017 WL 6375954, at *9 (S.D. Miss. Dec. 13, 2017). Judge Jordan held that the allegation

of these facts was sufficient to state a claim for unjust enrichment without discussing a heightened standard even though fraud was also alleged in the complaint. *Id.*

Liberty Mutual has alleged that Medworx wrongfully obtained money from it. (SAC, ¶¶ 38, 47-49). Liberty Mutual is seeking return of those funds. (SAC, ¶¶ 38, 47-49). Accordingly, Liberty Mutual's Second Amended Complaint states sufficient facts, and defendants' Motion to Dismiss Complaint should be dismissed.

### E. Liberty Mutual has stated a claim for conversion.

"Conversion requires 'a wrongful possession' with 'intent to exercise dominion or control over goods which is inconsistent with the true owner's right.'" *Midwest Feeders, Inc. v. Bank of Franklin*, 114 F.Supp.3d 419, 426 (S.D. Miss. 2015) (quoting *Community Bank, Ellisville, Miss. v. Courtney*, 884 So. 2d 767, 773 - 74 (Miss. 2004)). The intent does not have to be that of a wrongdoer. *Id*. In other words, "one may be liable for the tort of conversion even if acting under a good-faith mistake of fact or law." *Id*. (quoting *In re Blake*, 516 B.R. 352, 358 (Bankr.N.D.Miss. 2014)).

Even if Medworx incorrectly believed the pumps and/or cuffs were used at patient's homes or were otherwise reimbursable even though they were used in a surgical facility, Liberty Mutual has alleged that they were not reimbursable. (SAC, ¶ 28). Liberty Mutual has alleged that Medworx retains money which belongs to Liberty Mutual – money paid for claims which should not have been reimbursable. (SAC, ¶¶ 38, 50-51). Liberty Mutual has alleged that Medworx possesses money belonging to Liberty Mutual and is exercising dominion or control over the money as it will not return it to the true owner, Liberty Mutual, despite Liberty Mutual's demands. (SAC, ¶¶ 38, 50-51). Accordingly, Liberty Mutual alleged facts sufficient to state a claim for conversion.

**F. Liberty Mutual's claims are not barred by the statute of limitations.**

    **i.    All of Liberty Mutual's claims are timely, because the continuing tort doctrine applies since Medworx continuously repeated the same wrongful conduct until 2018.**

"A 'continuing tort' is one inflicted over a period of time; it involves wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A *continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation*." *Stevens v. Lake*, 615 So. 2d 1177, 1183 (Miss. 1993) (emphasis in original). In cases involving a continuing tort, "the statute of limitations does not begin to run until the date of the last injury." *Sun State Oil, Inc. v. Pahwa*, No. 3:18-cv-619-DPJ-FKB, 2019 WL 138650, at *2 (S.D. Miss. Jan. 8, 2019) (quoting *Pierce v. Cook*, 992 So. 2d 612, 618 (Miss. 2008)). "Where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury, or when the tortious acts cease." *Stevens*, 615 So. 2d at 1183 (quoting C.J.S., Limitations of Actions § 177 at 230-31).

In *Merchants & Marine Bank v. Douglas-Guardian Warehouse Corp*., the bank loaned a steel company money in exchange for a security interest in the borrower's steel inventory. *Merchants & Marine Bank v. Douglas-Guardian Warehouse Corp*., 801 F.2d 742 744 (5th Cir. 1986). Douglas-Guardian agreed to monitor the value of the steel inventory and provide regular reports to the bank to ensure it did not fall below the bank's minimum hold number. *Id*. During the term of the agreement, Douglas-Guardian submitted regular reports certifying that the value of the inventory exceeded the bank's minimum hold figure, but the figures were artificially inflated. *Id*. When the steel company defaulted and the value of the inventory was not sufficient to cover its debt, the bank sought to recover from Douglas-Guardian. *Id*. at 745. Douglas-Guardian asserted that the action was time-barred because some of the inventory valuation certificates or reports were

submitted more than six years before suit was filed.[1] *Id*. The Fifth Circuit affirmed the trial court's decision and found that "each time that a false report was submitted to the Bank, a separate but ongoing breach of the Verified Inventory Control Agreement occurred." *Id*. As a result, the court held that "there was a continuing violation and that the Bank's cause of action did not accrue until it discovered the inventory shortage on October 6, 1977," near the time of the last report that was submitted. *Id*.

The type of continuing tort in *Merchants & Marine Bank* is the same type of repeated and continued wrongful act present in this case. Douglas-Guardian repeatedly and continuously sent reports to the bank that misrepresented the true value. In the present case, Medworx repeatedly and continuously sent CMS Form 1500's, invoices, and other documents to Liberty Mutual that misrepresented where the pumps and cuffs were used and whether they were payable. Each time Medworx submitted a CMS Form 1500 misrepresenting the place of service, a separate but ongoing tort extending the statute of limitations occurred.

While the investigation and discovery is still ongoing, Liberty Mutual believes the last claim submitted to Liberty Mutual by Medworx misrepresenting the place of service was on February 6, 2018, and payment was made by Liberty Mutual on March 9, 2018, for a date of service in December 2017.[2] Accordingly, this court should follow the Fifth Circuit, apply the continuing tort doctrine, and find that the statute of limitations did not begin to run until February 6, 2018, when Medworx sent its last CMS Form 1500 containing a misrepresentation, or March 16, 2018, when Liberty Mutual paid the last claim based upon Medworx's misrepresentation.

---

[1] Mississippi's general statute of limitations was six years at the time Merchants & Marine Bank filed suit on September 27, 1983.
[2] Liberty Mutual believes the last payment it made in reliance upon Medworx's misrepresentations was March 16, 2018, for a claim submitted January 11, 2018.

Since suit was filed September 24, 2018, Liberty Mutual's claims are timely, and Medworx's motion to dismiss should be denied.

> ii. **Alternatively, all of Liberty Mutual's claims are timely, because Liberty Mutual did not suspect or discover that Medworx was submitting claims using the wrong place of service code until late 2017.**

If the Court does not agree with Liberty Mutual that the case involves a continuing tort for purposes of the running of the statute of limitations, then Liberty Mutual's claims are not barred because they did not discover, or have reason to discover, the tort until late 2017.

"A fraud claim accrues either (1) upon the completion of the sale induced by such false representations, or (2) upon the consummation of the fraud." *Weathers v. Metropolitan Life Ins. Co.*, 14 So. 3d 688, 692-93 (Miss. 2009) (citing *Wilbourn v. Equitable Life Assurance Society of the United States,* 998 So. 2d 430, 437 (Miss. 2008)). However, "a genuine issue of material fact may exist as to when fraud is 'consummated.'" *Id*. (citing *Wilbourn*, 998 So. 2d at 438). In other words, the discovery exception of Miss. Code Ann. § 15-1-49(2) applies, and the statute of limitations does not begin to run until the plaintiff "discovers or should have discovered the alleged misrepresentations." *Id*. (citing *Fletcher v. Lyles*, 999 So. 2d 1271, 1277 (Miss. 2009); *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 168 (Miss. 1999)).

*Weathers* was a vanishing premium life insurance case where the policyholder brought suit against the life insurer for fraud and misrepresentation, fraudulent inducement, breach of contract, and negligent training/supervision. *Weathers*, 14 So. 3d at 690. Weathers alleged that he purchased a life insurance policy after the agent represented that he would only have to pay premiums for ten years and after that time, the policy would become self-sustaining through dividends. *Id*.at 689. Weathers alleged that he did not discover that he would have to pay out-of-pocket premiums

beyond ten years until he received a class-action notice. *Id*. at 690. MetLife contended that his claims accrued much earlier when he received the policy. *Id*.

The court first confirmed that the applicable statute of limitations for his fraud and misrepresentation claims was three years pursuant to Miss. Code Ann. § 15-1-49. *Id*. at 691-92 (citing *CitiFinancial Mortgage Co. v. Washington*, 967 So. 2d 16, 17 (Miss. 2007); *Carter v. Citigroup, Inc*., 938 So. 2d 809, 817 (Miss. 2006); *Sanderson Farms, Inc. v. Ballard*, 917 So. 2d 783, 789 (Miss. 2005)). The court then analyzed when the statute of limitations began to run. "The statute of limitations commences upon discovery of an injury, and discovery is an issue of fact to be decided by a jury when there is a genuine dispute." *Id*. at 692 (quoting *Donald v. Amoco Prod. Co*., 735 So. 2d 161, 167 (Miss. 1999)). The court explained that the critical question is "whether … we can identify as a matter of law, the point at which Weathers knew or should have known or should have made an inquiry, based on information available to him." *Id*.

In *Weathers*, the date the fraud was consummated depended on whether he was put on notice by the plain language of the policy that the agent's verbal representations were false. *Id*. at 693. If he was put on notice by the plain language of the policy that the agent's representations were false, then the fraud accrued on the date of the sale. *Id*. On the other hand, if the plain language of the policy did not clearly contradict the agent's representations to put him on notice, then the fraud did not accrue until he became aware of the misrepresentation. *Id*. The court summed up these two rules as follows, "the discovery exception of Section 15-1-49(2) applies, so that **the statute of limitations begins to run when the insured discovers or should have discovered the alleged misrepresentations**." *Id*. (emphasis added). The court concluded that the plain language of the policy did not put Weathers on notice of the misrepresentation or fraud, and denied MetLife's motion for summary judgment because the "triggering event" – the date Weathers

discovered or should have discovered the alleged misrepresentation – was an issue of material fact. *Id*. at 694.

Thus, under the applicable rule of law, Liberty Mutual's claims did not accrue until Liberty Mutual discovered or should have discovered the misrepresentations. *Id*. at 693. Liberty Mutual has alleged that they did not discover the alleged misrepresentations until very recently before filing suit in September 2018. In fact, Liberty Mutual did not begin to suspect the misrepresentations until October 2017, at which point they made further inquiry and stopped reimbursing Medworx for these fraudulent claims after discovering the misrepresentations as a result of the further inquiry in late 2017 and early 2018. (Exhibit "1," Declaration of William Jenkin). Exhibit 1 to the Second Amended Complaint shows that the dates of service for the claims ceased before the end of 2017 (a few claims were paid in early 2018). This corroborates the fact that Liberty Mutual stopped reimbursing the claims in late 2017 and early 2018 when the misrepresentations were discovered and confirmed.

The documentation submitted by Medworx stated plainly that the service for which reimbursement was being sought was performed in the patients' homes "Place of Service code 12." It was not reasonable to expect Liberty Mutual to discover Medworx's misrepresentations. There was nothing on the face of the CMS Form 1500's or the other information submitted with the CMS Form 1500 to put Liberty Mutual on notice that the pumps and cuffs were only used in a surgical facility and not at home. Medworx certified under the penalty of criminal punishment and civil penalties that the claims it was submitting did not contain "any misrepresentation or any false, incomplete or misleading information." The CMS Form 1500 stated:

NOTICE: Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties.

Liberty Mutual has asserted that Medworx's misrepresentations were unknown to it until its recent discovery, and this factual allegation must be taken as true when considering Medworx's Motion to Dismiss. All of Liberty Mutual's claims are timely as a matter of law, but at a minimum, there is an issue of fact as to when Liberty Mutual discovered Medworx's misrepresentations. Accordingly, this Court should deny Defendants' Motion to Dismiss Complaint based upon the statute of limitations.

### iii. Even if the statute of limitations bars some claims, it does not bar claims that accrued within three years of September 24, 2018.

Even if the Court disagrees that the continuing tort doctrine or the discovery rule applies to the present dispute, the statute of limitations does not bar Liberty Mutual's claim for reimbursement for any claims accruing in the last three years.

It is not disputed that Mississippi's general three-year statute of limitations found in Miss. Code Ann. § 15-1-49 applies to all of Liberty Mutual's claims. Thus, even if this Court finds that neither the discovery rule nor the continuing tort doctrine applies, the only claims affected by the motion to dismiss should be those that were actually paid by Liberty Mutual prior to September 24, 2015. Medworx contends that the cause of action may have accrued on the date Medworx submitted the CMS Form 1500's, but the earliest the claim could have accrued under any scenario is when Liberty Mutual actually paid the claim. Until Liberty Mutual paid the claim, there was no reliance or damages, which are elements of a fraudulent misrepresentation and negligent misrepresentation claim. *Holland*, 3 So. 3d at 100 – 01. Likewise, there could be no claim for unjust enrichment or conversion until Medworx retained money that rightfully belonged to Liberty Mutual.

Any claim submitted by Medworx that misrepresented the place of service as the patient's home when it was actually only used in the surgical facility that was paid by Liberty Mutual after

September 24, 2015, accrued within three years of filing suit, and those claims are timely even if the discovery rule and continuing tort doctrine do not apply.

### G. The proper remedy for failing to satisfy the pleading requirements of Fed. R. Civ. P. 9(b) is allowing plaintiffs to amend rather than dismissal.

Liberty Mutual contends it has pleaded the circumstances constituting fraud with sufficient particularity that Medworx and Walters are each on notice of their alleged misconduct. However, in the event this Court disagrees, Liberty Mutual requests leave to Amend its Second Amended Complaint to plead more specific details, including many that have already been provided to Medworx and Walters through informal and formal discovery.

"When a Court finds that a motion to dismiss should be granted on the basis of a failure to comply with Rules 8 and 9, it is generally appropriate to provide the plaintiffs an opportunity to remedy the pleading deficiencies through the filing of an amended complaint. *Sahlein v. Red Oak Capital, Inc*., No. 313-cv-00067-BMB-JMV, 2014 WL 3046477, at *5 (N.D. Miss. July 3, 2014) (citing *Gordon v. Green*, 602 F.2d 743, 745 (5th Cir. 1979)). A court should only dismiss a claim without providing an opportunity to amend "if the defect in question is incurable or the party has repeatedly failed to cure when given opportunities to do so." *Harlow v. Friendship Medical Clinic, LLC*, No. 3:15-cv-00160-MPM-SAA, 2016 WL 9130982, at * 4 (N.D. Miss. April 28, 2016) (citing *Hart v. Bayer Corp*. 199 F.3d 239, 248 (5th Cir. 2000)). "District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court they are unwilling or unable to amend in a manner that will avoid dismissal." *Dickens v. A-1 Auto Parts & Repair, Inc*., No. 1:18cv162-LG-RHW, 2018 WL 5726206 at *3 (S.D. Miss. Nov. 1, 2018) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 329 (5th Cir. 2002)).

While Liberty Mutual believes it has described the circumstances constituting fraud with sufficient particularity, it is willing to, and requests leave to, amend to correct any perceived deficiencies. Medworx and Walters will not be prejudiced as they have not even answered the Second Amended Complaint yet.

## V.      CONCLUSION

Liberty Mutual pled the circumstances constituting Medworx's fraud with particularity, including identifying what (false place of service codes entered on CMS Form 1500/Health Insurance Claim Forms and invoices for pumps and/or cuffs for home use that were never provided for home use), when (from 2011 through 2018), where (on inaccurate CMS Form 1500/Health Insurance Claim Forms, invoices, and claims documents fraudulently submitted), and how (using the wrong place of service code and submitting invoices signifying the pumps and/or cuffs were used in patients' homes rather than only in surgery resulting in Liberty Mutual paying over $750,000 in claims that were not properly reimbursable and would not have otherwise been paid). It also identified who (Medworx at the direction of and including the participation of Walters). Liberty Mutual pled that Walters is liable individually because he substantially and knowingly participated in the direction and execution of these fraudulent acts. He is also individually responsible as the permit holder under the Mississippi Board of Pharmacy's regulations. These factual allegations must be taken as true, and these factual allegations sufficiently state a claim against all defendants. Moreover, Liberty Mutual's claims against all defendants are timely because the statute of limitations did not begin to run under the continuing tort doctrine until the last wrongful act in early 2018 or did not begin to run under the discovery rule until Liberty Mutual discovered the misrepresentations in late 2017. Liberty Mutual respectfully requests that this Court deny defendants' Motion to Dismiss Second Amended Complaint.

DATED:  April 6, 2020.

                                   Respectfully submitted,

                                   LIBERTY MUTUAL INSURANCE
                                   COMPANY, ET AL.


                              BY:   /s/ *Shea S. Scott*
                                        OF COUNSEL


Kenneth A. Rutherford (MSB #5749)
Shea S. Scott (MSB #100775)
DANIEL COKER HORTON & BELL, P.A.
265 North Lamar Boulevard, Suite R
Post Office Box 1396
Oxford, MS 38655-1396
Tel:     662.232.8979
Fax:     662.232.8940
krutherford@danielcoker.com
sscott@danielcoker.com


## CERTIFICATE OF SERVICE

        I hereby certify that on April 6, 2020, I electronically filed the foregoing document with

the Clerk of the Court using the ECF system which sent notification of such filing to all counsel

of record.

                Elizabeth G. Hooper, Esq.
                Jennifer H. Scott, Esq.
                Danielle Love Burks, Esq.
                Charles M. Harrell, Esq.
                WISE CARTER CHILD & CARAWAY, P.A.
                Post Office Box 651
                Jackson, Mississippi 39205
                *Attorneys for Defendants*


                              BY:   /s/ *Shea S. Scott*
                                        SHEA S. SCOTT